`IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

A&A MARKETING, INC., an Illinois )
corporation, )
 )
        Plaintiff, )
 )
        v. )
 )
YOGESH SONAR, alias "Jack Smith," )
an individual; SURAJ NAIR, alias )
"Steve Nair" and "Sam Nair," an )
individual; DARPANA SANGVHI, an )
individual; GOVIND NARAYANAN )
PILLAI, alias "Steve Winsent," an )
Individual; SKAYANS MARKETING )
PVT., LTD., a limited liability company, )
RACKSPACE US, INC., a Delaware )
Corporation; GODADDY.COM, INC., )
A corporation; DYNAMIC DOLPHIN, a )
Corporation; VERTRUE, INC., a )
Canadian corporation; HYDRA, LLC, )
a limited liability company; CUTTING )
EDGE MEDIA, INC., a corporation; )
ROIROCKET; EPIC ADVERTISING, )
ROCKET PROFIT; VALUECLICK, INC., )
a corporation; CLICKBOOTH; )
GONIMBLE TECH PVT., LTD., a )
Corporation; and ADJECTIVE MEDIA )
& MARKETING, LLC, a limited liability )
Company, )
 )
        Defendants. )

No.

FILED: JUNE 12, 2009
09CV3586
JUDGE KENNELLY
MAGISTRATE JUDGE NOLAN
BR

**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

1

NOW COMES the Plaintiff, A&A MARKETING, INC., by and through its counsel, John N. Julian, III, and for its verified complaint for Injunctive and Other Relief against the Defendants states as follows:

## THE PARTIES

1. Plaintiff, A&A Marketing, Inc. ("Plaintiff"), is an Illinois corporation with its principal place of business at 1411 McHenry Road, Buffalo Grove, Illinois.

2. Defendant Yogesh Sonar ("Defendant Sonar") is an individual with his place of residence at 361 Rimini Court, No. 301, Palatine, Illinois.

3. Defendant Suraj Nair ("Defendant Nair") is an individual residing in Mumbai, India.

4. Defendant Darpana Sangvhi ("Defendant Sangvhi") is an individual residing in Toronto, Ontario, Canada.

5. Defendant Govind Narayanan Pillai ("Defendant Pillai") is an individual residing in Kerala, India.

6. Upon information and belief, Defendant Skayans Marketing Pvt., Ltd. ("Defendant Skayans Marketing") is a limited liability company that is of Indian origin, with its principal place of business in Bangalore, India.

7. Upon information and belief, Defendant GoNimble Tech Pvt., Ltd. is a corporation of Indian origin, with its principal place of business in Bangalore, India.

8. Upon information and belief, Defendant Adjective Marketing & Media, LLC is a limited liability company with its principal place of business in Bangor, Maine.

9. Defendants Sonar, Nair, Sangvhi, Pillai, Skayans Marketing, GoNimble Tech Pvt., Ltd. and Adjective Media & Marketing, LLC shall be collectively referred to as "the Offending Defendants."

10. The following parties shall be collectively referred to as "Third-Party Providers":

   a. Rackspace US, Inc. is a Delaware corporation with its principal place of business in San Antonio, Texas.

   b. GoDaddy.com is a division of GoDaddy, Inc., a corporation of unknown residence.

   c. Dynamic Dolphin, Inc. is a corporation providing domain registration services, with its principal place of business in Broomfield, Colorado.

11. The following parties shall be collectively referred to as "Affiliate Marketing Parties":

   a. Neverblue is a division of Vertrue, Inc., a Canadian corporation with its principal place of business in British Columbia, Canada.

   b. Hydranetwork is a division of Hydra, LLC, a limited liability company with its principal place of business in Beverly Hills, California.

   c. TheBizOppNetwork is a division of Cutting Edge Media, Inc.

   d. ROIRocket is an enterprise of unknown form with its principal place of business in Denver, Colorado.

   e. AzoogleAds is a division of Epic Advertising, an enterprise with its principal place of business in New York, New York.

   f. RocketProfit is an enterprise of unknown form and unknown residence.

g. ValueClick is a division of ValueClick, Inc., a corporation with its principal place of business in Westlake Village, California.

h. ClickBooth is an enterprise of unknown form, with its principal place of business in Sarasota, Florida.

12. The Third-Party Providers and the Affiliate Marketing Parties are at this point unwilling participants in the scheme operated by the Offending Defendants, but upon information and belief are bound by the terms of agreements between them and the Offending Defendants, absent injunctive relief.

## JURISDICTION

13. This is a civil action arising under the Computer Fraud and Abuse Act, a federal statute, 18 USC §1030 and, therefore, jurisdiction is proper pursuant to federal question jurisdiction, 28 USC §1331. Pendent jurisdiction of Plaintiff's remaining claims is proper pursuant to 28 USC §1367.

14. Personal jurisdiction over the Offending Defendants is proper as they have each committed acts against the Plaintiff involving the Plaintiff's business, which resides in Illinois. In addition, two of the individuals included in the Offending Defendants (Sonar and Nair) each had entered into agreements with Plaintiff, which agreements form the basis of portions of the Plaintiff's claims against the Defendants, and which agreements were formed in Illinois.

## VENUE

15. Venue is proper in the Northern District of Illinois pursuant to 28 USC
    §1391(a)(1)(2), as the Plaintiff and Defendant Sonar reside in this district and a
    substantial part of the events giving rise to Plaintiff's claims occurred in this
    judicial district.

## BACKGROUND

16. Plaintiff is in the internet affiliate marketing industry. As an integral part of its
    business, Plaintiff operates websites on which members of the public register as
    users, entering during the process, their personal information and in many cases
    credit card information, among other information (e.g., buying preferences and
    practices).

17. Plaintiff uses that information provided by the users themselves to, among other
    things, perform marketing research and to generate internet traffic for its clients.
    One method of doing so is to utilize its users' contact information provided by
    those users by *legally* sending advertising emails to those users promoting the
    websites of the Plaintiff's customers. These efforts are called "campaigns." In
    general terms, the client of Plaintiff requests that Plaintiff drive traffic to
    designated websites.

18. Defendant Sonar was an employee of Plaintiff from December 2007 through
    June 9, 2009. At the time of his termination from the Plaintiff's employ, Sonar's

position was that of Senior Marketing Manager. As part of his position, Defendant Sonar was given access to, among other things, the Plaintiff's proprietary software, website, site programming, proprietary and licensed software, computer code, and data and strategies related to the company's operations and search engine optimization techniques. He is known to use the alias "Jack Smith" in business.

19. Defendant Nair was employed by Plaintiff on two different occasions, the first being from October 2006 through June 2007, and from March 2008 through June 2008, at which time he was terminated for failure to perform. Defendant Nair had come to the United States from India at the suggestion of Defendant Sonar, and on a visa sponsored by Plaintiff. During his employment, Nair's job title was that of Systems Analyst, and also worked as a marketing representative for Plaintiff. As part of his position, he was given access to, among other things, the Plaintiff's proprietary software and computer code, and data and strategies related to the company's search engine optimization techniques. He is known to use the aliases "Steve Nair" and "Sam Nair" in business.

20. Defendant Sanghi is the paramour of Defendant Sonar and was employed by Plaintiff from March 2006 through November 2006. Her position while with the company was that of Software Programmer. She too was given access as part of her position to Plaintiff's confidential and proprietary information.

21. Defendant Pillai was employed by Plaintiff from February 2006 through June 9, 2009 in Bangalore, India. Defendant's Pillai's position with Plaintiff at the time of his termination was that of Software Programmer, including the designing and

6

developing of websites for Plaintiff and its clients. He is known to use the alias "Steve Winsent" in business.

## THE PATTERN OF UNFAIR COMPETITION

22. On June 9, 2009, Plaintiff's senior management discovered that the Defendants had been working together to steal code, software, data, strategies and other proprietary and confidential information from Plaintiff, and to use same for great monetary gain.

23. Specifically, Plaintiff "seeds" its own data by creating email addresses that are only used for registering on its own sites to determine whether that data is being pirated. If that test email address is used for some other purpose (i.e., if the company receives email at that address from any other company), Plaintiff knows that the email address has been stolen and provided to a third party.

24. Prior to June 8, 2009, Plaintiff's Vice President had created the email "zeewholesale@hotmail.com" and used it to register it as a user on a site that Plaintiff operates, namely "surveyteam.com." Plaintiff has not used that email address for any other purpose.

25. On or about June 8, 2009, Plaintiff received an email directed to zeewholesale@hotmail.com from surveyfeeds.com. A copy of that email is attached hereto as Exhibit A.

26. Plaintiff investigated the sender of that email and found it to be from surveys@surveyfeeds.com. Plaintiff further traced that email's sender by checking the domain registration for surveyfeeds.com. Plaintiff found that domain

registered to Defendant Skayan Marketing. Upon investigation of the server used
to host surveyfeeds.com, Plaintiff found that server to have an Internet Protocol
("IP") address of "98.129.186.201" and found that IP address hosted by
Defendant Rackspace US, Inc. (doing business as Rackspace.com), and
registered to Defendant Sanghvi.

27. At that time, the domain and server registration information available showed that
there were approximately 42 other domains registered to Skayans Marketing.

28. In further investigation, Plaintiff checked the domain and server registration
information on as many of those other domains as reasonably possible; and has
learned that other websites and domains have been used in this scheme. These
domains were all registered through either Defendant GoDaddy, Inc. or
Defendant Dynamic Dolphin, Inc.

29. Plaintiff also found through its investigations that other websites associated with
the Offending Defendants listed Adjective Media & Marketing, LLC and
GoNimble Tech Pvt., Ltd. as the owners.

30. The total list of sites being operated by the Offending Defendants is growing as
of the time of filing: takepaidsurveys.com; freegrantinfo.com; surveyfeeds.com;
gonimble.com; gonimbletech.com; makemoneysense.com; bikereviews.com;
surveyorigin.com; mainepages.com; due-data-calculator.com;
quesdillamakers.com; adjmedia.com; 2009usgrants.com; yarnworld.com;
grantsurvey.net; 6ahoo.com; freshgrants.com; freegrantfund.com; and
grantinfo.com. These sites are hereafter collectively referred to as "the Involved
Websites."

31. On June 9, 2009, Defendant Sonar's employment with Plaintiff was terminated and his company laptop computer confiscated. Upon reviewing the files on that computer, the Plaintiff discovered, among other things, a complaint directed to the Florida Better Business Bureau. That complaint had been filed by an individual alleging: he had been receiving "spam" from Skayans Marketing; that he had requested his removal from the Skayans Marketing distribution lists; and that such had not happened. Defendant Sonar's possession of this complaint proves conclusively that he is the key person at Skayans Marketing. A true and accurate copy of that document is attached hereto as Exhibit B.

32. Since June 9, 2009, Plaintiff has found that several of the registration information records have been changed from Skayans Marketing to "Domains By Proxy, Inc.," a service provided by GoDaddy.com that allows domain registrants to keep domain registration information private.

33. In order to maintain a fully legitimate and compliant operation, Plaintiff has worked diligently to put in place practices and procedures that will prevent its email recipients from being spammed, i.e., from receiving unsolicited emails. Consequently, Plaintiff has received "double opt-in certification," ensuring its emails are delivered as planned. Plaintiff has also learned, however, that the Defendants have used Plaintiff's software to systematically send unsolicited emails to millions of users in Plaintiff's databases, and that Defendants have done so from the Plaintiff's own mail servers. As a result, all 21 of Plaintiff's own mail servers have been "blacklisted" by all major internet service providers. This illegal practice has continued up through June 11, 2009. (In fact, even as late as

June 11, 2009, Plaintiff's own employees had received unsolicited emails from surveyfeeds.com. A copy of same is attached as Exhibit C.)

34. On June 9, 2009, Defendant Sonar was confronted by Plaintiff's management. In that conversation, Sonar admitted that he had been working with the other Offending Defendants in a scheme that misappropriated substantial and valuable property from the Plaintiff. Specifically, Sonar admitted that he had taken Plaintiff's user records and used them in an enterprise with his girlfriend, Defendant Sangvhi, as well as Defendants Nair and Pillai.

35. Plaintiff has contacted the United Stated Federal Bureau of Investigations to report these crimes. On June 9, 2009, Plaintiff also filed a police report with the Buffalo Grove, Illinois Police Department, which is investigating these matters. On June 9, 2009, Sonar willingly appeared at the said Police Department and provided a statement, in which he further admitted the wrong-doing. At that time, Sonar admitted to stealing in excess of 25,000,000 user records.

36. Late in the evening on June 10, 2009, Defendant Sonar visited Plaintiff's President, Neena Arora Narang, and its Vice President, Mr. Vini Narang, at their home, and Sonar begged for forgiveness. During that conversation, Defendant Sonar claimed he had only profited in the amount of about $6500. Mr. Narang asked that Defendant Sonar prove as much and provide the log-in information for Defendant Sonar's payment accounts with Sonar's customers so that they could confirm what Defendant Sonar was telling Mr. Narang. Defendant Sonar sat with Mr. Narang and logged into various accounts held with customers, which

showed, among other things, how much money had been earned and/or paid by
those customer companies.

37. During that meeting, Mr. Narang and Defendant Sonar accessed the following
accounts and confirmed the corresponding commissions earned and/or paid by
those customers in connection with the Defendants' activities.

| Customer | Commissions | Payee |
| --- | --- | --- |
| The BizOpp Network | $6,5133.30 | Skayans Marketing |
| Rocket Profit | $0.00 | Suraj Nair |
| HydraNetwork | $13,128.60 | Suraj Nair |
| AzoogleAds | $0.00 | Suraj Nair |
| Clickbooth | $90.00 | Suraj Nair |
| Neverblue | $996.45 | Suraj Nair |
| ROIRocket | $410,415.60 | Steve Nair |

38. Each of these accounts had an associated email of "steve@gonimble.com."

39. Plaintiff's management reviewed the site gonimble.com, and determined that it
has the same design and computer code as a site operated by Plaintiff,
bigdevil.com.

40. Further, the HydraNetwork account references other individuals and entities
besides Suraj Nair as connected to the account. Specifically, it names Skayans
Marketing and Yogesh Sonar as referrals on the account.

41. On that night of June 10, 2009, Defendant Sonar and Mr. Narang went through
each of these accounts without incident until they viewed the ROIRocket
account, which showed commissions earned in excess of $410,000. Upon

11

viewing that account, Defendant Sonar abruptly ended the meeting and left the Narang residence.

42. Defendant Sonar's possession and use of the log-in information for these affiliate accounts demonstrates Defendant Sonar's control over these accounts and the management of them, including proceeds paid from them, and is further conclusive evidence that he is the key person in Skayans Marketing.

43. The funds from these affiliate accounts are being paid to bank accounts at HDFC, an institution in India.

**COUNT I**
**BREACH OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT, 18 USC 1030**
**AGAINST DEFENDANTS SONAR, NAIR, SANGVHI**
**and PILLAI,**
**and the THIRD-PARTY PROVIDERS and AFFILIATE MARKETING PARTIES**

44. Plaintiff restates and incorporates by reference the foregoing allegations as though fully set forth herein.

45. Defendants Sonar, Nair, Sangvhi and Pillai are in violation of the Federal Computer Fraud and Abuse Act, 18 USC §1030, namely subsections (a)(2)(C), (a)(4), (a)(5)(A)(i), (a)(5)(A)(ii) and (a)(5)(A)(iii).

46. Defendants Sonar, Nair, Sangvhi and Pillai as employees of Plaintiff exceeded the accesses and uses authorized to them by Plaintiff on the Plaintiff's company computer equipment, servers, databases and websites.

47. Defendants knowingly and with the intent to defraud Plaintiff accessed the Plaintiff's protected information.

48. Defendants obtained Plaintiff's user records, including personal and financial information, of individuals that reside in and outside the State of Illinois.

49. Defendants actions were reckless and have caused damage to Plaintiff.

50. As a direct and proximate result of these Defendants' conduct, Plaintiff has
suffered damages in excess of $500,000 as known at the time of filing,
representing actual damages, lost business opportunities, lost good will as well
as lost profits.

WHEREFORE, Plaintiff A&A MARKETING, INC. prays for the following relief:

a. An injunction prohibiting DEFENDANTS YOGESH SONAR, SARUJ NAIR,
DARPANA SANGVHI and GODVIN NARAYANAN PILLAI from accessing
Plaintiff's sites, computers, databases and other property.

b. An injunction prohibiting these Defendants from using any information contained
in Plaintiff's user records or any other of Plaintiff's property in business or for
profit or in any manner.

c. An injunction prohibiting these Defendants from operating any websites in
competition with Plaintiff

d. An injunction causing these Defendants to freeze all activity using Plaintiff's
property, including a halting of their use of websites identified before the court
(including without limitation those registered through GoDaddy and Dynamic
Dolphin, Inc.), conduct of business with clients (including without limitation the
Affiliate Marketing Parties), and operation and use of all servers (including
without limitation those under the control of Defendant Rackspace).

e. An injunction directed to the Third-Party Providers and Affiliate Marketing Parties causing said parties to shut down all services, servers, other hardware and software being used by Sonar, Nair, Sanghvi and Pillai.

f. An accounting by the named Offending Defendants as to the full use and misappropriation of Plaintiff's property, as well as damages related thereto and disgorgement of profits gained therefrom.

g. Consequential damages related to their breach of this statute in an amount to be proven at trial.

h. Interest on damages incurred from the date they were incurred.

i. Attorney's fees and costs arising from this action.

j. And any other relief the court deems just.

## COUNT II
## BREACH OF ILLINOIS TRADE SECRETS ACT 765 ILCS 1065
## AGAINST DEFENDANTS SONAR, NAIR,
## SANGVHI, PILLAI, SKAYANS MARKETING, GONIMBLE TECH and ADJECTIVE
## MARKETING & MEDIA

51. Plaintiff restates and incorporates by reference the foregoing allegations as though fully set forth herein.

52. Among other property, Plaintiff's user information, user lists, computer code, software and strategies are property of Plaintiff that is not known but to a very few individuals. They are the subject of more than reasonable steps to maintain their secrecy, which provides Plaintiff with an economic advantage in its industry.

53. They constitute trade secrets as that term is contemplated under the Illinois Trade Secrets Act.

54. Defendants have acted in concert to misappropriate these trade secrets for their own use through surveyfeeds.com and other websites, in direct competition with Plaintiff's sites.

55. Defendants are in violation of 765 ILCS §1065.

56. As a direct and proximate result of these Defendants' conduct, Plaintiff has suffered damages in excess of $500,000 as known at the time of filing, representing actual damages, lost business opportunities, lost good will and lost profits.

WHEREFORE, Plaintiff A&A MARKETING, INC. prays for the following relief:

a. An injunction prohibiting DEFENDANTS YOGESH SONAR, SARUJ NAIR, DARPANA SANGVHI, GODVIN NARAYANAN PILLAI and SKAYANS MARKETING PVT., LTD. from accessing Plaintiff's sites, computers, databases and other property.

b. An injunction prohibiting these Defendants from using any information contained in Plaintiff's user records or any other of Plaintiff's property in business or for profit or in any manner.

c. An injunction prohibiting these Defendants from operating any websites in competition with Plaintiff

d. An injunction causing these Defendants to freeze all activity using Plaintiff's property, including a halting of their use of websites identified before the court (including without limitation those registered through GoDaddy and Dynamic Dolphin, Inc.), conduct of business with clients (including without limitation the

Affiliate Marketing Parties), and operation and use of all servers (including without limitation those under the control of Defendant Rackspace).

e. An injunction directed to the Third-Party Providers and Affiliate Marketing Parties causing said parties to shut down all services, servers, other hardware and software being used by Sonar, Nair, Sanghvi and Pillai.

f. An accounting by the named Offending Defendants as to the full use and misappropriation of Plaintiff's property, as well as damages related thereto and disgorgement of profits gained therefrom.

g. Consequential damages related to their breach of this statute in an amount to be proven at trial.

h. Interest on damages incurred from the date they were incurred.

i. Attorney's fees and costs arising from this action.

j. And any other relief the court deems just.

<u>COUNT III</u>
**BREACH OF THE ILLINOIS COMPUTER TAMPERING ACT 720 ILCS §5/16D-3 AGAINST DEFENDANTS SONAR, NAIR and PILLAI**

57. Plaintiff restates and incorporates by reference the foregoing allegations as though fully set forth herein.

58. Defendants Sonar, Nair and Pillai are in violation of the Illinois Computer Tampering Act, namely 720 ILCS §5/16D-3(a)(1), §5/16D-3(a)(2), (a)(3) and (a)(4).

59. Defendants Sonar knowingly and intentionally exceeded the authorization of the Plaintiff granted to him by accessing and copying the Plaintiff's website development information and user information records.

16

60. Defendant Nair knowingly and intentionally exceeded the authorization of the Plaintiff granted to him by accessing and copying the Plaintiff's computer software and computer code.

61. Defendant Pillai knowingly and intentionally exceeded the authorization of the Plaintiff granted to him by accessing and copying the Plaintiff's website development and design information.

62. Defendants have also installed a "chronjobs" application on the Plaintiff's servers which systematically send email notifications to Plaintiff's registered users.

63. As a direct and proximate result of such conduct, Plaintiff has suffered damages in excess of $500,000 as known at the time of filing

WHEREFORE, Plaintiff A&A MARKETING, INC. prays for the following relief:

a. Consequential damages from Defendants Sonar, Nair and Pillai related to their breach of this statute in an amount to be proven at trial.

b. Interest on damages incurred from the date they were incurred.

c. Attorney's fees and costs arising from this action.

d. And any other relief the court deems just.

## COUNT IV
### BREACH OF FIDUCIARY DUTY
### AGAINST DEFENDANTS SONAR, NAIR and PILLAI

64. Plaintiff restates and incorporates by reference the foregoing allegations as though fully set forth herein.

65. Defendants Sonar, Nair and Pillai were put in a position of trust by Plaintiff within Plaintiff's employ.

66. Therefore, Defendants Sonar, Nair and Pillai owed Plaintiff a fiduciary duty to act in the best interests of Plaintiff.

67. These Defendants breached that duty by creating and maintaining their own sites and business operations in direct competition with the business of Plaintiff.

68. These Defendants also breached their duty by soliciting the Plaintiff's users and customer information with promotional information about their own enterprise.

69. As a direct and proximate result of their conduct, Plaintiff has suffered damages in excess of $500,000, representing actual damages, lost business opportunities, lost good will and lost profits.

WHEREFORE, Plaintiff A&A MARKETING, INC. prays for the following relief:

a. An injunction prohibiting DEFENDANTS YOGESH SONAR, SARUJ NAIR, and GODVIN NARAYANAN PILLAI from accessing Plaintiff's sites, computers, databases and other property.

b. An injunction prohibiting these Defendants from using any information contained in Plaintiff's user records or any other of Plaintiff's property in business or for profit or in any manner.

c. An injunction prohibiting these Defendants from operating any websites in competition with Plaintiff

d. An injunction causing these Defendants to freeze all activity using Plaintiff's property, including a halting of their use of websites identified before the court (including without limitation those registered through GoDaddy and Dynamic Dolphin, Inc.), conduct of business with clients (including without limitation the

Affiliate Marketing Parties), and operation and use of all servers (including without limitation those under the control of Defendant Rackspace).

e. An injunction directed to the Third-Party Providers and Affiliate Marketing Parties causing said Defendants to shut down all services, payments, servers, other hardware and software being used by the named of the Offending Defendants.

f. An accounting by the named of the Offending Defendants as to the full use and misappropriation of Plaintiff's property, as well as damages related thereto and disgorgement of profits gained therefrom.

g. Consequential damages related to their breach of this statute in an amount to be proven at trial.

h. Interest on damages incurred from the date they were incurred.

i. Attorney's fees and costs arising from this action.

j. And any other relief the court deems just.

## COUNT V
## SPECIFIC ENFORCEMENT OF EMPLOYMENT CONTRACTS AGAINST DEFENDANTS SONAR and NAIR

70. Plaintiff restates and incorporates by reference the foregoing allegations as though fully set forth herein.

71. Plaintiff entered into employment contracts with Defendants Sonar and Nair.

72. Those employment contracts are attached hereto as Exhibits D and E.

73. Each of those contracts constitutes a valid and binding agreement between Plaintiff and Defendants Sonar and Nair.

74. Each of those contracts contained provisions:

    a.  Prohibiting the use and disclosure of Plaintiff's proprietary and confidential information;

    b.  Prohibiting the removal of Plaintiff's property;

    c.  Prohibiting each such employee from soliciting business, whether individually or through another party, from any of Plaintiff's customers;

    d.  Prohibiting each employee from competing against the Plaintiff in an individual capacity or through another party.

    e.  Providing for injunctive relief in the case of such breaches.

75. The Third-Party Providers and Affiliate Marketing Parties are unwilling participants in the scheme being perpetrated, but are bound by agreements, absent an injunction.

WHEREFORE, Plaintiff A&A MARKETING, INC. prays for the following relief:

    a.  An order specifically enforcing the provisions of the employment agreements between Plaintiff and DEFENDANTS YOGESH SONAR and SARUJ NAIR.

    b.  An injunction prohibiting these Defendants from:

        i.  using or disclosing Plaintiff's proprietary and/or confidential information;

        ii.  soliciting business from any of Plaintiff's customers; and

        iii.  competing against the Plaintiff in the Plaintiff's lines of business.

    c.  An injunction prohibiting these Defendants from accessing Plaintiff's sites, computers, databases and other property.

d. An injunction prohibiting these Defendants from using any information contained in Plaintiff's user records or any other of Plaintiff's property in business or for profit or in any manner.

e. An injunction prohibiting these Defendants from operating any websites in competition with Plaintiff

f. An injunction causing these Defendants to freeze all activity using Plaintiff's property, including a halting of their use of websites identified before the court (including without limitation those registered through GoDaddy and Dynamic Dolphin, Inc.), conduct of business with clients (including without limitation the Affiliate Marketing Parties), and operation and use of all servers (including without limitation those under the control of Defendant Rackspace).

g. An injunction directed to the Third-Party Providers and Affiliate Marketing Parties causing said Defendants to shut down all payments, services, servers, other hardware and software being used by Defendants Sonar or Nair.

h. And any other relief the court deems just.

## COUNT VI
## TEMPORARY RESTRAINING ORDER AGAINST ALL DEFENDANTS

76. Plaintiff restates and incorporates by reference the foregoing allegations as though fully set forth herein.

77. Plaintiff has many protectable interests in its data and user records and their personal information, trade secrets, computer software, computer code, site design, and business strategies.

78. The Offending Defendants have perpetrated substantial damage through unlawful means, and continue to do so even at the time of filing.

79. The Offending Defendants have also acted to destroy evidence, by, among other things, altering website, server and log-in information on relevant sites and customer accounts between the date of the discovery of their nefarious schemes and the date of filing of this pleading.

80. The Third-Party Providers and Affiliate Marketing Parties are unwilling participants in this scheme, but are bound by agreements absent an injunction.

81. The extent of the damage is difficult at this time to calculate, and continued activity by the Offending Defendants will render monetary damages speculative, difficult to calculate or impossible to calculate.

82. The damage caused by the Offending Defendants is also causing Plaintiff substantial injury to its business relationships and good will.

83. Funds representing illegally gained profits are being funneled to Indian bank accounts, where they may be readily accessed by others involved in these schemes and dispersed beyond practical steps to trace same.

84. These injuries are immediate and irreparable injury, loss and damage will certainly be experienced by the Plaintiff (and possibly others) before the Defendants may be heard.

85. Such injuries will not be adequately remedied through strictly legal remedies.

WHEREFORE, Plaintiff A&A MARKETING, INC. prays for the following relief:

a. A temporary restraining order prohibiting the Offending Defendants from accessing Plaintiff's sites, computers, databases and other property.

b. A temporary restraining order prohibiting the Offending Defendants from using any information contained in Plaintiff's user records or any other of Plaintiff's property in business or for profit or in any manner.

c. A temporary restraining order prohibiting the Offending Defendants from operating any websites in competition with Plaintiff

d. A temporary restraining order causing the Offending Defendants to freeze all activity using Plaintiff's property, including a halting of their use of websites identified before the court (including without limitation those registered through GoDaddy and Dynamic Dolphin, Inc.), conduct of business with clients (including without limitation the Affiliate Marketing Parties), and operation and use of all servers (including without limitation those under the control of Rackspace).

e. A temporary restraining order directed to the Third-Party Providers and Affiliate Marketing Parties causing said Defendants to shut down all payments, services, servers, other hardware and software being used by the Offending Defendants.

f. And any other relief the court deems just.

## COUNT VII
## PRELIMINARY INJUNCTION AGAINST ALL DEFENDANTS

86. Plaintiff restates and incorporates by reference the foregoing allegations as though fully set forth herein.

87. Plaintiff has many protectable interests in its data and user records and their personal information, trade secrets, computer software, computer code, site design, and business strategies.

88. The Offending Defendants have perpetrated substantial damage through unlawful means, and continue to do so even at the time of filing.

89. The Third-Party Providers and Affiliate Marketing Parties are unwilling participants in this scheme, but are bound by agreements absent an injunction.

90. The Offending Defendants have also acted to destroy evidence, by, among other things, altering website, server and log-in information on relevant sites and customer accounts between the date of the discovery of their nefarious schemes and the date of filing of this pleading.

91. The extent of the damage is difficult at this time to calculate, and continued activity by the Offending Defendants will render monetary damages speculative, difficult to calculate or impossible to calculate.

92. The damage caused by the Offending Defendants is also causing Plaintiff substantial injury to its business relationships and good will.

93. Funds representing illegally gained profits are being funneled to Indian bank accounts, where they may be readily accessed by others involved in these schemes and dispersed beyond practical steps to trace same.

94. These injuries are immediate and irreparable injury, loss and damage will certainly be experienced by the Plaintiff (and possibly others) before the Defendants may be heard.

95. Such injuries will not be adequately remedied through strictly legal remedies.

24

WHEREFORE, Plaintiff A&A MARKETING, INC. prays for the following relief:

a.  A preliminary injunction prohibiting the Offending Defendants from accessing Plaintiff's sites, computers, databases and other property.

b.  A preliminary injunction prohibiting the Offending Defendants from using any information contained in Plaintiff's user records or any other of Plaintiff's property in business or for profit or in any manner.

c.  A preliminary injunction prohibiting the Offending Defendants from operating any websites in competition with Plaintiff

d.  A preliminary injunction causing the Offending Defendants to freeze all activity using Plaintiff's property, including a halting of their use of websites identified before the court (including without limitation those registered through GoDaddy and Dynamic Dolphin, Inc.), conduct of business with clients (including without limitation the Affiliate Marketing Parties), and operation and use of all servers (including without limitation those under the control of Rackspace).

e.  A preliminary injunction directed to the Third-Party Providers and Affiliate Marketing Parties causing said Defendants to shut down all payments, services, servers, other hardware and software being used by Sonar, Nair, Sanghvi, Pillai and Skayans Marketing.

f.  And any other relief the court deems just.

Respectfully submitted,                              A&A MARKETING, INC.

                                                     By: John N. Julian, III
                                                     Its Attorney
                                                     The Julian Law Firm
                                                     618 S. Northwest Hwy, No. 173
                                                     Barrington, IL 60010
                                                     Tel 312.261.5566
                                                     Fax 312.278.0254

## VERIFICATION

I, Neena Arora Narang, being duly sworn, do attest that I am the President of the Plaintiff in this matter, A&A Marketing, Inc., that I have reviewed the allegations set forth in the above pleading, that I am personally familiar with the contents thereof, and that the same are true and accurate.

Neena Arora Narang

## VERIFICATION

I, Vini Narang, being duly sworn, do attest that I am the Vice President of the Plaintiff in this matter, A&A Marketing, Inc., that I have reviewed the allegations set forth in the above pleading, that I am personally familiar with the contents thereof, and that the same are true and accurate.

Vini Narang

Subscribed and sworn before me this 12th day of June 2009.

John N. Julian, III, Notary Public – Comm. Exp. 12-26-2010